# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

TERRANCE E. DELONEY,

       **Plaintiff,**

   *vs.*

CAROLYN W. COLVIN, **Commissioner of
Social Security,**

       **Defendant.**

**CAUSE NO.  1:14-cv-1813-DKL-JMS**

## ENTRY

Plaintiff Terrance E. Deloney applied for disability benefits under the Social Security Act. The defendant Commissioner of Social Security denied his applications and Mr. Deloney now sues for judicial review of her denial.

## Standards

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. §
405(g); *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart,* 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that

Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations.  Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner.  Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  *Carradine*, 360 F.3d at 758.  While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*.  *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).  20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966.  The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process.  42 U.S.C. ▪§ 423(d)(2)(B) and 1382c(a)(3)(G).  20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further.  At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled.  At the second step, if the applicant's impairments are not severe, then he is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled.  The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling.  20 C.F.R. ▪ 404.1525.  If the applicant's impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy,

3

together with any additional non-exertional restrictions.  At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled.  Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy.  42 U.S.C. ▪ 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination.  The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled.  If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work level, then the grids may not be used to determine disability at that level.  Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics.  *Lee v.*

*Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. ▪ 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

## Background

In September, 2011, Mr. Deloney applied for supplemental-security-income benefits on account of a disability that he alleged began in December 2009. After his

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (▪ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

application was denied by the state agency on initial and reconsideration reviews, Mr. Deloney requested and received a hearing before a Social Security Administration administrative law judge in April, 2013.  Mr. Deloney testified at the hearing, as did a vocational expert and Mr. Deloney's case manager at Meridian Services, a medical facility at which Mr. Deloney was receiving services.  On Mr. Deloney's counsel's request for the testimony of a psychologist on the subject of medical equivalence to a listing, the ALJ held a second hearing in July, 2013, at which a medical expert testified.  The ALJ issued his decision denying Mr. Deloney's claim in August, 2013.  In September, 2014, the Appeals Council denied Mr. Deloney's request to review the ALJ's decision, which rendered the ALJ's decision the final decision of the Commissioner on he claim and the one that the Court reviews.

At step one of the sequential evaluation process, the ALJ found that Mr. Deloney had not engaged in substantial gainful activity since he applied for benefits.  At step two, he found that Mr. Deloney has the severe impairments of history of lymphadenopathy, right axilla, multiple nodes; chronic stomach pain; unspecified anxiety disorder; major depressive disorder; borderline intellectual functioning; and post-traumatic stress disorder.  At step three, he found that Mr. Deloney's impairments, severe and non-severe, singly and in combination, do not meet or medically equal any condition in the listing of impairments.  The ALJ address listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.06 (anxiety related disorders).

For steps four and five, the ALJ determined Mr. Deloney's residual functional capacity.  He found that Mr. Deloney has the capacity to perform the full range of work at all exertional levels with the following non-exertional restrictions:  only simple and repetitive work; no more than superficial interaction with the public, co-workers, and supervisors; and the work should be performed remote from the public, co-workers, and supervisors.

At step four, the ALJ found that Mr. Deloney has no past relevant work.  At step five, the ALJ relied on the testimony of the vocational expert.  The expert testified that, given the ALJ's defined R.F.C. and Mr. Deloney's vocational characteristics, Mr. Deloney could perform the jobs of church janitor (approximately 200,000 jobs existing in the national economy), night office cleaner (approx. 400,000 jobs), and scrap sorter (approx. 58,000 jobs).  Based on this testimony, the ALJ found that a significant number of jobs exist in the national economy that Mr. Deloney can perform and, therefore, he is not disabled.

### Discussion

Mr. Deloney argues two errors in the ALJ's decision.

**1.  Failure to consider Listing 12.05.**  Mr. Deloney argues that he proved that he met listing 12.05C because he had a verbal IQ score of 66 and the ALJ found that he had the additional severe impairments of anxiety disorder and post-traumatic stress disorder, but the ALJ failed to address or consider that listing.  Listing 12.05, for intellectual disability (formerly mental retardation) provides:

Intellectual disability refers to significantly subaverage general intellectrual functioning with deficits in adaptive functioning initially manifested during the developmental period:   *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\*        \*        \*

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Part 404, Subpt. P, App. 1, Part A, § 12.05C.  An impairment "imposing an additional and significant work-related limitation of function" means a "severe impairment" as defined for step two of the sequential evaluation process.  *Id.*, § 12.00A, ¶ 4.  "Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability.  It also contains four sets of criteria (paragraphs A through D).  If your impairments satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing."  *Id.*

Because the ALJ found at step two that Mr. Deloney has the severe impairments of history of lymphadenopathy, chronic stomach pain, anxiety disorder, major depressive disorder, borderline intellectual functioning, and post-traumatic stress disorder, it is clear that Mr. Deloney has "an additional and significant work-related limitation of function" as required by paragraph C of listing 12.05.  There is also no dispute that F. Renee Nevins, Ph.D., who performed a diagnostic interview and mental status examination of Mr.

Deloney in October 2011,[2] assigned Mr. Deloney a verbal-comprehension IQ of 66.  (R. 230, 233.)   Mr. Deloney argues that his verbal-comprehension IQ of 66, within the required 6-70 range, and his other severe impairments proves that he meets listing 12.05C.

Mr. Deloney argues that the ALJ erred by not considering whether his impairments met listing 12.05C, and, if he had considered it, by "reject[ing] the treating psychologists' functional findings of Marked impairment simply because they were contrary to the ALJ's unqualified psychological opinion . . . ."  *Brief*, at 12-13.  Presumably, his last asserted error is directed to the "deficits in adaptive functioning" element of listing 12.05's diagnostic description.

Because the ALJ did not consider whether Mr. Deloney's impairments met listing 12.05C, the question of error depends on whether the evidence of record indicated that the listing should have been explicitly evaluated.  Mr. Deloney's attorney did not assert or argue that listing 12.05 was satisfied, in any pre-hearing brief, during the first or second hearings, or in his request for review by the Appeals Council.  At the conclusion of the first hearing, he did request that, if the ALJ had any doubt at to Mr. Deloney's disability, then the ALJ set a second hearing at which a psychologist could testify whether Mr.

_____

[2] This examination was performed about three weeks after Mr. Deloney applied for benefits and about three months before he started mental-health treatment, in February, 2012.  He states that this examination was performed "for Social Security."  *Plaintiff's Brief in Support of Complaint To Review Decision of Social Security Administration* [doc. 18] ("*Brief*"), at 2.  It is not clear whether the state agency ordered the examination as part of its review of his application or Mr. Deloney requested the examination to support his application.  It appears that counsel did begin representing Mr. Deloney until January, 2013.  (R. 94-95.)

Deloney's combined impairments medically equaled any listing, but he did not identify any particular listing.  (R. 70.)  At the first hearing, Mr. Deloney and his case manager asserted that his disabling functional limitations resulted from his post-traumatic stress disorder.  (R. 41, 56-57.)  At neither the first nor the second hearing did Mr. Deloney's attorney assert or argue that Mr. Deloney was mentally retarded or intellectually disabled, or that he was disabled under listing 12.05C.

Mr. Deloney now argues that the evidence of record proves that he meets the criteria of listing 12.05C and that the ALJ should have addressed it.  However, Mr. Deloney fails to show that met the introductory diagnostic description of listing 12.05. First, no medical source found or opined that he has "significantly subaverage general intellectual functioning."  In response to the Commissioner's argument that the record contains no diagnosis of mental retardation, Mr. Deloney argues that a diagnosis of intellectual disability or mental retardation is not required, citing *King v. Barnhart*, No. 1:06-cv-381-DFH-TAB, *Entry on Judicial Review*, 2007 WL 968746, *5 (S.D. Ind., Feb. 26, 2007).  Even granting *King*'s ruling, the Court of Appeals for the Seventh Circuit has ruled that the *absence* of a diagnosis is a valid consideration, *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999), and, in this record, there is much more than the simple absence of a diagnosis.

Dr. Nevins, the psychologist who assigned the verbal-comprehension IQ of 66 to Mr. Deloney after his mental-status examination assigned him four much higher IQ scores, all of them outside the 60-70 range:  full scale 76, perceptual reasoning 84, working

memory 83, and processing speed 92.  (R. 230, 233.)  Dr. Nevins diagnosed Mr. Deloney with borderline intellectual functioning, not mental retardation.  (R. 232.)  After reviewing all of the record evidence, including Dr. Nevins' verbal-comprehension IQ of 66, James Brooks, the testifying psychological expert, concluded that the record shows that Mr. Deloney's intellectual functioning is in the average range — not the subaverage range and not in the "significantly subaverage" range required by the diagnostic description of listing 12.05.  (R. 30-33.)  Dr. Brooks specifically found a "discrepancy" between the one IQ score of 66 assigned by Dr. Nevins and the average range estimated by Meridian Services, Mr. Deloney's treating source, and the ratings in the mental RFC evaluations.  (R. 31.)  In addition, Meridian Services' records show that a diagnosis regarding personality disorders or mental retardation was repeatedly deferred.  (R. 274, 277, 280, 283, 286, 289, 297, 300, 301, 308, 330, 332, 335, 349, 352, 355, 358, 360, 363, 366.)

The ALJ also found that Mr. Deloney's activities were not as limited as he alleged.  (R. 13, 16 ("I find the claimant's daily and social activities demonstrate the ability to perform basic functional activities.").)  Dr. Brooks also opined that his activities were at the moderate restriction level.  (R. 33.)  Dr. Nevins recorded Mr. Deloney's report that he has "intact ability to manage personal hygiene and complete household chores," (R. 230), also described by Dr. Nevins as "overall intact adaptive functioning," (R. 231).

Although Mr. Deloney has the burden to show that he satisfied listing 12.05C, he failed to address a key criterion in the diagnostic description:  the evidence must demonstrate or support onset of the impairment before the age of twenty-two years.  He

pointed to no evidence in the record showing or supporting that any mental retardation began before he reached twenty-two.  Dr. Brooks repeatedly noted the absence of any relevant evidence from Mr. Deloney's earlier years.  (R. 29 (brief school records do not include any testing, IQ scores, or formal evaluations), 30 ("we don't have any early records of any testing whatsoever"), 31-32, 33.)

Finally, the state-agency medical experts who reviewed the evidence did not opine that the evidence even implicated listing 12.05 and they did not opine that Mr. Deloney was mentally retarded or intellectually disabled.

Therefore, substantial evidence supports the ALJ's implicit decision to not address listing 12.05C because the record did not support it as a possibility.  Mr. Deloney has failed to show error by the ALJ.

**2. Limitation to simple and repetitive tasks.**  Mr. Deloney's argument is difficult to discern on this point.  He writes:  "The ALJ impermissibly failed to account for the claimant's combined impairments with GAF assessments of 48 in the totally disabled range."  *Brief*, at 16.  If he intends to assert that the ALJ erred by not addressing the Global Assessment of Functioning scores of 48, or by failing to find them dispositive, then he is wrong on the record and he fails to support his argument with legal authority.  The ALJ acknowledged the G.A.F. scores of 48 assigned by his treating source, Meridian Services, (R. 15 ¶4, 16 ¶ 1); he questioned the validity of the source's scoring because the scores remained stable even after the source's testing demonstrated improvement, (R. 16 ¶1); the ALJ also noted higher G.A.F. scores of 53, (R. 15 ¶ 3); and the ALJ explained the basis

for his finding that Mr. Deloney was not disabled based on all of the record evidence, not only G.A.F. scores.  Mr. Deloney provided no argument or authority supporting the proposition that G.A.F. scores should be dispositive on a claimant's disability.

Next, Mr. Deloney states: "Thus, the ALJ's residual functional capacity assessment attempted to account for the claimant's impairments by limiting him to 'simple, and repetitive' tasks (R. 14) i.e. unskilled work." *Brief*, at 16, 17.  He then states that this is analogous to the limitation addressed in a decision from the Northern District of Illinois wherein the court found that the ALJ's limitation erroneous because unskilled work "does not fully address the impact of mental limitations such as difficulties with concentration, persistence, or pace." (R. 16-17.)  Mr. Deloney did not explain why the present ALJ's limitation to unskilled work failed in any particular way to account for his mental impairments and the Court will not attempt to construct the argument for him.  It suffices to note that Dr. Brooks, the testifying psychologist, opined that Mr. Deloney could perform some kind of simple, repetitive tasks.  (R. 30, 31.)

**Conclusion**

Because Mr. Deloney has not shown that the Commissioner's denial of his claim for disability benefits is not supported by substantial evidence or the result of legal error, the Commissioner's decision will be affirmed.

**DONE this date:**   03/31/2016

*Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.